**GOLDEN YEARS NURSING HOME (NO. 2), INC., Appellant,**

**v.**

**GABBARD et al.; Star Banc Corporation, Appellee.**

[Cite as *Golden Years Nursing Home (No. 2), Inc. v. Gabbard* (1994), 94 Ohio App.3d 430.]

Court of Appeals of Ohio,
Butler County.

No. CA93–09–171.

Decided April 25, 1994.

*Keating, Muething & Klekamp, Gregory M. Utter* and *Michael L. Scheier,* for appellant.

*Masana, Masana & Hurr* and *Henry A. Masana,* for Nancy A. and Rexie A. Gabbard.

*Lindhorst & Dreidame* and *Stephen A. Bailey,* for appellee.

---

WALSH, Presiding Judge.

Plaintiff-appellant, Golden Years Nursing Home (No. 2), Inc. ("Golden Years"), appeals a decision of the Butler County Court of Common Pleas granting summary judgment to defendant-appellee, Star Banc Corporation ("Star Bank"), denying recovery of proceeds paid by Star Bank pursuant to an embezzlement scheme by a Golden Years employee.

Nancy Gabbard was employed as the office manager at Golden Years and was responsible for handling the financial aspects of the nursing home. Bud Angus, the administrator, was responsible for running the nursing home, including hiring, firing and supervising the office manager. Angus was the only person authorized to sign checks for Golden Years; however, Gabbard was provided with a signature stamp for certain business uses. This stamp could be used without the approval of Angus for advances to employees to a limit of $100; all other uses of the stamp had to have the approval of Angus.

Gabbard had authority to prepare and issue employee loan checks to Golden Years employees to be repaid by payroll deduction after obtaining approval from Angus. These checks were made payable to particular employees and drawn on Golden Years' corporate account at First National Bank. In addition, Gabbard was responsible for handling the patients' Social Security checks, which the patients had assigned to the nursing home to help pay for their stay in the home. These checks were issued by the Social Security Administration, made payable to either the patient alone or to both the patient and Golden Years, and drawn on the United States Treasury Department. Gabbard was responsible for noting the receipt of these checks, indorsing them with a "For Deposit Only" stamp, depositing them in Golden Years' corporate account at First National, and crediting the patients' accounts at the nursing home.

Eventually, Angus discovered that Gabbard had been embezzling funds from the nursing home from 1984–1991 in a scheme involving the employee loan checks and Social Security checks. With regard to the employee loan checks, Gabbard made false representations to Angus that certain employees desired a loan. She would then forge the employees' (payees') indorsements on the checks, sign her name below that as a second indorser and deposit or cash the checks at Star

Bank where she had a personal account. The employees whose names were on the loan checks never actually requested loans; rather, the checks were written by Gabbard exclusively for the purpose of embezzling the money.

As for the Social Security checks, although the facts are not clear as to exactly how Gabbard's embezzlement scheme worked, she either indorsed the checks with Golden Years' restrictive deposit-only stamp or forged the indorsements of the patients' names as payees. She then signed as a second indorser and deposited or cashed the checks at Star Bank.

On February 14, 1992, Golden Years filed suit in the Butler County Court of Common Pleas, naming as defendants Star Bank, Gabbard, and Gabbard's husband Rexie, who was a joint owner of her Star Bank account. Star Bank filed a motion for summary judgment on June 7, 1993, and in a decision issued on August 6, 1993, the trial court granted summary judgment to Star Bank, finding that it was not liable to Golden Years for cashing either the employee loan checks or the Social Security checks presented by Gabbard over the forged indorsements. Golden Years contends that that judgment was error.

 Articles 3 and 4 of the Uniform Commercial Code ("UCC"), R.C. Chapters 1303 and 1304, govern transactions involving negotiable instruments such as the checks in the present case. In the case of order instruments, payable to the order of a named payee, title is passed on the instrument and transferees of the instrument subsequent to the payee become "holders" of the instrument when it is negotiated and validly indorsed by the payee. R.C. 1303.23(A); White & Summers, Uniform Commercial Code (3 Ed.1988) 604, Section 13–9. A holder has certain rights as against prior transferees of the instrument but is also subject to certain claims and defenses on the instrument and may be liable to subsequent transferees. See R.C. 1303.30, 1303.35. If certain requirements are met, a holder can attain the preferred status of a "holder in due course" ("HIDC"), which affords the most protection against claims or defenses of other parties or holders of the instrument. See R.C. 1303.31, 1303.34.

 As a general rule, the forgery of a payee's indorsement on order paper, such as the employee loan and Social Security checks, breaks the chain of title and no subsequent transferee of the instrument can qualify as a holder. See R.C. 1303.40(A), which provides that "[a]ny unauthorized signature [defined in R.C. 1301.01(QQ) to include a forged indorsement] is wholly inoperative as that of the person whose name is signed * * *." See, also, *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 50, 517 N.E.2d 904, 909, and fn. 7. Therefore, because qualifying as a holder is a prerequisite to attaining HIDC status, generally no one who takes an order instrument with a forged indorsement can become an HIDC, and anyone who pays on an instrument containing a forged indorsement is liable

thereon. See R.C. 1303.31(A); White & Summers, *supra*, at 697–698, Section 14–3.

However, there are two exceptions to the general rule, found in R.C. 1303.41 and R.C. 1303.42, whereby a forged indorsement is deemed to be validated and good title passes to a subsequent transferee who then becomes a holder and can attain HIDC status and protection against liability on the instrument. *Ed Stinn Chevrolet v. Natl. City Bank* (1986), 28 Ohio St.3d 221, 227, 28 OBR 305, 310–311, 503 N.E.2d 524, 530–531 (citing R.C. 3103.41 and 1303.42); see, also, White & Summers, *supra*, at 793, Section 16–4. The trial court found that Star Bank was not liable as a matter of law for paying on the employee loan checks presented by Gabbard due to the operation of the "padded payroll" or "fictitious payee" defense of R.C. 1303.41(A). We agree.

■ The padded-payroll or fictitious-payee defense, also known as the imposter rule, validates a forged payee's indorsement whenever the drawer or his employee has designated as payee someone who is not really intended to have an interest in the instrument. In such a case, good title passes to a subsequent transferee and the instrument will be properly payable out of the drawer/employer's bank account, despite a forged payee indorsement. *Ed Stinn Chevrolet, supra*, 28 Ohio St.3d at 227–228, 28 OBR at 310–311, 503 N.E.2d at 530–532; *Hinkle v. Cornwell Quality Tool Co.* (1987), 40 Ohio App.3d 162, 169, 532 N.E.2d 772, 779.

■ The theory behind R.C. 1303.41(A) is that the risk of loss caused by a dishonest employee should be placed on the employer rather than the subsequent holder bank because the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of employees, or, if not, is at least in a better position to cover the loss by fidelity insurance. *Ed Stinn Chevrolet, supra*, 28 Ohio St.3d at 228, 28 OBR at 311, 503 N.E.2d at 531–532; White & Summers, *supra*, at 794, Section 16–4. Furthermore, under R.C. 1303.41(A), the negligence of a bank in accepting an instrument with a forged payee indorsement is immaterial, as the statute is silent on the issue of the bank's lack of care. *Hinkle, supra*, 40 Ohio App.3d at 172, 532 N.E.2d at 781–782; White & Summers, *supra*, at 801–802, Section 16–4.

■ Because Gabbard, as a Golden Years employee, provided her employer with names of employees who had not really requested loans for the specific purpose of embezzling money without ever intending that the employees have an interest in the checks, we find that the trial court was correct in concluding that the padded-payroll defense of R.C. 1303.41(A) precluded Golden Years, the drawer of the checks, from asserting the forged payee indorsements against Star Bank. Contrary to Golden Years' contention, we also agree with the trial court

that the defense is available to depositary banks such as Star Bank, as well as drawee banks who pay on instruments containing forged indorsements. See *Hinkle, supra,* 40 Ohio App.3d at 169, 532 N.E.2d at 779 ("[W]e believe that the depositary/collecting bank should be permitted to raise the same Code defenses available to a drawee/payor bank, including the imposter rule."). Therefore, we find that the trial court was correct in sustaining Star Bank's motion for summary judgment relative to the employee loan checks.

◼ Regarding the Social Security checks, the trial court found that Star Bank was not liable as a matter of law for paying on these checks, which were presented by Gabbard, because Star Bank was an HIDC of the checks. The trial court reasoned that by indorsing the checks in blank, Gabbard converted them from order to bearer paper. See R.C. 1303.25(B). According to the trial court, since forged indorsements on bearer paper do not break the chain of title, Star Bank, as a subsequent transferee, qualified as a holder and consequently attained HIDC status and protection, thereby relieving it of any liability to Golden Years. See White & Summers, *supra,* at 641, Section 13–9.

◼ The trial court's analysis, however, is flawed. According to the UCC, only a *valid* indorsement converts order paper into bearer paper. See R.C. 1303.23(B) (providing that an indorsement "must be written by or on behalf of the holder"); White & Summers, *supra,* at 641, Section 13–9. Therefore, Gabbard's forged indorsements on the Social Security checks were not valid signatures and the chain of title to the instruments were broken at that point, making Gabbard's blank indorsements as a second indorser ineffective to pass good title to Star Bank. Thus, since the general rule regarding forged indorsements applies, Star Bank did not obtain good title, and could not become a holder or HIDC of the Social Security checks.

◼ As a consequence, Star Bank will be liable to Golden Years for paying on these Social Security checks over forged indorsements unless one of the two exceptions in R.C. 1303.41 or 1303.42 applies. As the trial court correctly pointed out, the padded-payroll defense of R.C. 1303.41(A) is not applicable to the Social Security checks because the drawer, the Social Security Administration, clearly intended the named payees to have an interest in the instruments.

◼ The "negligence defense" of R.C. 1303.42 is as follows:

"Any person who by his negligence substantially contributes to * * * the making of an unauthorized signature [defined to include a forged indorsement] is precluded from asserting the * * * lack of authority against a holder in due course or against a drawee *or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.*" (Emphasis added.)

Thus, the negligence defense may be available to relieve Star Bank of liability on the Social Security checks if it can be shown that Golden Years' negligence "substantially contributed" to Gabbard's embezzlement of the checks *and* if Star Bank itself was free of any negligence in cashing the checks. See R.C. 1303.42; White & Summers, *supra*, at 782–783, Section 16–1, and at 789, Section 16–3 (contributory negligence of bank destroys availability of negligence defense and bank will be liable in conversion for paying over forged indorsement).

■ In determining the applicability of the negligence defense, the relative conduct of the parties must be weighed to determine whether either or both acted negligently with regard to the Social Security checks. Although the trial court did not specifically cite R.C. 1303.42, and neither party addressed this defense at trial or on appeal, it appears that the trial court largely based its finding that Star Bank was not liable on the checks on the conclusion that Golden Years was grossly negligent in its audit procedures and that its negligence, rather than any negligence of Star Bank, facilitated Gabbard's embezzlement. However, negligence issues are particularly inappropriate for summary judgment. *Lazar v. Cleveland Elec. Illum. Co.* (1975), 43 Ohio St.2d 131, 144, 72 O.O.2d 74, 81, 331 N.E.2d 424, 432–433.

Furthermore, it is not entirely clear from the record how Gabbard actually negotiated the Social Security checks to Star Bank. The trial court listed five possible scenarios, including forged payee indorsements and valid payee indorsements where Star cashed the checks over a restrictive "For Deposit Only" stamped indorsement. It is possible that Star Bank may have been negligent in cashing the checks under some of the scenarios, *i.e.*, cashing over a restrictive indorsement, thereby forfeiting the right to rely on the negligence defense to relieve it of liability, but not under others. Therefore, we find that a genuine issue of material fact exists as to whether Star Bank was negligent in dealing with the Social Security checks, precluding summary judgment on this matter. See *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 65–66, 609 N.E.2d 144, 144–146.

Accordingly, we affirm the trial court's grant of summary judgment to Star Bank with regard to the employee loan checks and reverse the trial court's grant of summary judgment to Star Bank with regard to the Social Security checks and remand that issue for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WILLIAM W. YOUNG, J., concurs.

KOEHLER, J., concurs in part and dissents in part.

KOEHLER, Judge, concurring in part and dissenting in part.

The depositary bank, appellee, is not a holder in due course. The majority finds that the negligence defense in this cause is particularly inappropriate for summary judgment on the forged indorsements of the Social Security checks. I concur.

However, even if the "padded payroll," "fictitious payee," or "imposter" defenses are available to appellee, a factual question is presented which makes summary judgment inappropriate, and therefore I dissent in the ruling as to the employee checks.

Further, the majority's reliance on *Hinkle v. Cornwell* is misplaced. The dicta therein are not applicable to this cause and reliance should be placed on *GFD Enterprises, Inc. v. Nye* (1988), 37 Ohio St.3d 205, 525 N.E.2d 10.