ROMANO'S CARRYOUT, INC., Appellant,

v.

P.F. CHANG'S CHINA BISTRO, INC., et al., Appellees.

[Cite as *Romano's Carryout, Inc. v. P.F. Chang's China Bistro, Inc.*, 196 Ohio App.3d 648, 2011-Ohio-4763.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–1140.

Decided Sept. 20, 2011.

Kevin O'Brien & Associates Co., L.P.A., and Kevin O'Brien, for appellant.

Dinsmore & Shohl, L.L.P., Gregory P. Mathews, and Gary E. Becker, for appellees.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Romano's Carryout, Inc., appeals a judgment of the Franklin County Municipal Court in favor of defendant-appellee, P.F. Chang's China Bistro, Inc. For the following reasons, we affirm the judgment.

{¶ 2} Romano's is a convenience store and check-cashing business operated by Steve Arsalane. According to Arsalane, in mid-December 2009, Jose L. Garcia came into his store to cash a payroll check that Garcia had received from his employer, P.F. Chang's. Garcia indorsed the check in front of Arsalane, and Arsalane tendered to him the amount of the check ($776.81) minus a one percent check-cashing fee.

{¶ 3} Arsalane deposited the check with National City Bank, where Romano's maintained an account. National City Bank presented the check to P.F. Chang's bank, Bank of America, N.A., for payment. Instead of issuing payment, Bank of America returned the check and marked on the front of it, "RETURN REASON—[ ] STOP PAYMENT."

{¶ 4} On April 20, 2010, Romano's filed suit against P.F. Chang's. Romano's alleged that R.C. 1303.54 obligated P.F. Chang's, as the drawer, to pay the amount of the check to Romano's, the holder. At a bench trial, Arsalane testified to the facts set forth above. Arsalane also testified about his business relationship with Garcia. According to Arsalane, he first met Garcia in early 2007 when Garcia came into Romano's to cash a payroll check from his employer, McDonald's. After that, Garcia became a regular customer of Romano's. Arsalane claimed to have cashed for Garcia approximately 80 checks from McDonald's and 20 checks from P.F. Chang's.

{¶ 5} On cross-examination, Arsalane acknowledged that Garcia had indorsed the check at issue as "Jose Jarcia." Arsalane explained that because he knew Garcia and saw Garcia sign the check, the misspelling of Garcia's last name did not cause him to suspect that someone other than Garcia had indorsed the check. Defense counsel then presented Arsalane with all of Garcia's cancelled P.F. Chang's payroll checks. Each of the cancelled checks bears the stamp of the check-cashing business that paid and deposited the check on its reverse side. After reviewing the checks, Arsalane admitted that none of the checks issued prior to December 18, 2009 [1] displayed Romano's stamp. Defense counsel then asked Arsalane whether "the one and only P.F. Chang's check that was ever presented to Romano's Carryout was the one at issue in this case." Arsalane answered yes.

{¶ 6} At the conclusion of the trial, the trial court orally pronounced judgment in P.F. Chang's favor. The trial court reduced its judgment to writing in a November 9, 2010 judgment entry. Romano's now appeals that judgment entry, and it assigns the following error:

> The November 9, 2010, decision and entry in favor of P.F. Chang's was against the manifest weight of the evidence.

{¶ 7} Under the manifest-weight-of-the-evidence standard, when competent, credible evidence exists supporting the findings and conclusions of the trial court, an appellate court must affirm the trial court's judgment. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742. The manifest-weight-of-the-evidence standard requires an appellate court to presume that the findings of a trier of fact are correct. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. This presumption arises because the trier of fact, who can observe the witnesses' demeanor, gestures, and voice inflections, is best able to weigh and judge the credibility of the proffered testimony. *Id.* Consequently, an appellate court cannot reverse a decision simply because it holds a different opinion regarding the credibility of the witnesses and evidence before the trial court. *Wilson* at ¶ 24; *Seasons Coal Co.* at 81.

{¶ 8} Romano's premised its claim against P.F. Chang's on R.C. 1303.54(B), which provides:

> If an unaccepted draft is dishonored, the drawer is obliged to pay the draft * * *:

> (1) According to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder[.]

---

1. The check at issue in this case was dated December 18, 2009.

\* \* \*

The obligation is owed to a person entitled to enforce the draft.

Pursuant to R.C. 1303.54(B), a drawer [2] possesses an obligation to pay a check according to its terms in the event the drawer's bank dishonors [3] the check. *1/2 Price Checks Cashed v. United Auto. Ins. Co.* (Tex.2011), 344 S.W.3d 378 (interpreting a subsection of a Texas statute virtually identical to R.C. 1303.54(B)). The drawer owes this obligation to any "person entitled to enforce" the check, which includes "[t]he holder of the instrument." R.C. 1303.31(A)(1). See also *1/2 Price Checks Cashed* ("The drawer's obligation extends not just to the payee, but also to any downstream holder of the instrument").

{¶ 9} Bank of America dishonored the check at issue because P.F. Chang's ordered it to stop payment. A drawer may stop payment of a check drawn on its bank account. R.C. 1304.32(A). However, the drawer's stop-payment order does not rescind its obligation to pay the holder of the check, and it does not impair the holder's suit to enforce that obligation. 2 White & Summers, Uniform Commercial Code (5th Ed.1988) 441, Section 21–5. See also UCC Official Comment (1990), Section 4–403, Comment 7 ("The payment can be stopped but the drawer remains liable on the instrument \* \* \* "); 6 Anderson, Uniform Commercial Code (3d Ed.1994) 848, Section 3–413:101 ("The drawer who stops payment of his or her check is liable to the holder of the check for the amount of the check \* \* \*, unless the drawer can establish a defense"). Thus, P.F. Chang's could stop payment of the check at issue, but it continued to owe any holder of the check.

{¶ 10} A person can become a holder of a check when that check is issued to that person, or the status of a holder can arise as a result of an event that occurs after issuance. Uniform Commercial Code Official Comment (1990), Section 3–201, Comment 1. If a check is made payable to an identified person, that identified person is a holder of the check while he or she is in possession of the check. R.C. 1301.01(T)(1)(b).[4] Such a holder can transfer the check, along with

---

**2.** A "drawer" is "a person who signs or is identified in a draft as a person ordering payment." R.C. 1303.01(A)(3). In this case, the check identifies P.F. Chang's as the entity ordering payment, so P.F. Chang's is the drawer.

**3.** Dishonor of a check occurs if after the "check is duly presented for payment to the payor bank otherwise than for immediate payment over the counter, \* \* \* the payor bank makes timely return of the check or sends timely notice of dishonor or nonpayment under section 1304.27 or 1304.28 of the Revised Code \* \* \*." R.C. 1303.62(B)(1). The parties do not dispute that Bank of America, P.F. Chang's bank, dishonored the check at issue in this case.

**4.** R.C. 1301.01 was repealed by 2011 Am.H.B. No. 9, effective June 29, 2011. That act amended the provisions of R.C. 1301.01 and renumbered that section so that it now appears at

his or her holder status, to another person through negotiation.  R.C. 1303.21(A) (" 'Negotiation' means a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument").  With one exception not applicable to this case, "if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." R.C. 1303.21(B).  See also *Golden Years Nursing Home (No. 2), Inc. v. Gabbard* (1994), 94 Ohio App.3d 430, 434, 640 N.E.2d 1186 ("In the case of order instruments, payable to the order of a named payee, title is passed on the instrument and transferees of the instrument subsequent to the payee become 'holders' of the instrument when it is negotiated and validly indorsed by the payee").

{¶ 11} "Indorsement" means "a signature, other than that of a signer as maker, drawer, or acceptor" that is made for purposes that include "negotiat[ion] [of] the instrument."  R.C. 1303.24(A)(1)(a).  Generally, "an unauthorized signature is ineffective," and thus such a signature does not constitute an "indorsement by the holder."  R.C. 1303.43(A).  See also *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 50, 517 N.E.2d 904 (holding that "an unauthorized signature does not operate as the signature of the named payee and, accordingly, may not act to pass title to an instrument" when interpreting former R.C. 1303.40(A), an earlier version of R.C. 1303.43(A)); *Bernardo v. Anello* (1988), 61 Ohio App.3d 453, 459, 573 N.E.2d 126 (same).  An "unauthorized" signature is "one made without actual, implied, or apparent authority and includes a forgery."  R.C. 1301.01(QQ).[5]

{¶ 12} Read together, R.C. 1303.21(B), 1303.43(A), and 1301.01(QQ) preclude a person who accepts a check under a thief's forged indorsement from becoming a holder.  Since the thief of a check payable to another is not a holder, any writing the thief makes on the back of the check is not an "indorsement by the holder."  Consequently, "the transaction—however voluntary with a third party who is fooled by the thief—does not constitute a negotiation * * * and does not therefore render that third party himself a holder."  2 White & Summers, Uniform Commercial Code (5th Ed.1988) 172, Section 17–3.  See also *Morris* at 50, 517 N.E.2d 904, fn. 7 (" 'Since the thief lacks the status of a holder, he cannot

R.C. 1301.201.  As R.C. 1301.201 applies only to transactions entered on or after June 29, 2011, we apply R.C. 1301.01 to this appeal.  We note that the R.C. 1301.201(B)(21)(a) definition of "holder" is substantially similar to the R.C. 1301.01(T)(1)(a) and (b) definition of "holder."

5.  As we stated above, R.C. 1301.01 applies to the instant case, even though it was repealed and replaced with R.C. 1301.201.  We note that R.C. 1301.01(QQ) and 1301.201(B)(41) are substantially similar.

effectively indorse the instrument, and his transferee cannot acquire that status.' ").  If any endorsement in the chain of title is forged, none of the transferees who accept the check after the forged endorsement qualify as holders.  *Id.*; *Gabbard*, 94 Ohio App.3d at 434, 640 N.E.2d 1186.  See also 4 Hawkland, Uniform Commercial Code Series (1999), Section 3–202:4;  6 Anderson, Uniform Commercial Code (3d ed.1994) 142, Section 3–305:301.

{¶ 13} In order to challenge the authenticity of, or the authority to make, a signature on a check, a defendant must specifically deny the validity of the signature in its answer.  R.C. 1303.36(A); *Fifth Third Bank v. Jones–Williams*, 10th Dist. No. 04AP–935, 2005-Ohio-4070, 2005 WL 1870772, ¶ 22.  If a defendant does so, the burden of establishing validity is on the plaintiff.  R.C. 1303.36(A).  In carrying this burden, the plaintiff has the benefit of a rebuttable presumption that the signature is authentic and authorized.  *Id.* Thus, the trier of fact must presume the validity of the signature unless and until the defendant introduces evidence that would support a finding that the signature is unauthentic or unauthorized.  *Id.*;  R.C. 1301.01(EE) (definition of "presume").  To rebut the presumption, the defendant need not present the quantum of evidence necessary for the grant of a directed verdict;  rather, the defendant must only present evidence sufficient to permit the trier of fact to make a finding in the defendant's favor.  *Dryden v. Dryden* (1993), 86 Ohio App.3d 707, 712, 621 N.E.2d 1216;  Uniform Commercial Code Official Comment (1990), Section 3–308, Comment 1.  If the defendant succeeds in rebutting the presumption, then the plaintiff bears the burden of proving the validity of the signature by a preponderance of the total evidence.  *Id.*

{¶ 14} In the case at bar, Romano's claimed that because it was the holder of the payroll check issued to Garcia, P.F. Chang's owed it payment once Bank of America dishonored the check.  P.F. Chang's challenged Romano's holder status by attacking the validity of the indorsement.  In its answer, P.F. Chang's "specifically denie[d] the authenticity of, and the authority to make, the signature of Defendant Garcia on the instrument at issue."

{¶ 15} At trial, P.F. Chang's pointed out that Garcia's last name was misspelled in the indorsement.  Because the probability of a person misspelling his or her own name is remote, this evidence rebutted the presumption of validity.  Romano's, then, had to prove the validity of Garcia's alleged signature.  To do this, Romano's relied on Arsalane's testimony that he knew Garcia because he had previously cashed approximately 100 payroll checks for Garcia.  Arsalane claimed that he saw Garcia sign the check at issue.  P.F. Chang's, however, impeached Arsalane's testimony.  When presented with all of Garcia's cancelled payroll checks from P.F. Chang's, Arsalane could not find Romano's stamp on any of the checks issued prior to the check at issue.  Arsalane then admitted that the check

at issue was the first and only P.F. Chang's check that Garcia cashed at Romano's.

{¶ 16} Based on the foregoing evidence, the trial court could resolve the case in one of two ways. First, the trial court could believe Arsalane's testimony. If the trial court accepted that Arsalane knew Garcia and saw Garcia sign the check, then the court would have to conclude that indorsement was authentic. In that case, Garcia properly negotiated the check to Romano's, and Romano's, as the holder of the check, was entitled to payment from P.F. Chang's.

{¶ 17} Tangentially, we note that under the above scenario, Romano's recovery would not depend on whether it qualified as a holder in due course. If the validity of a disputed signature is proved, the holder is entitled to payment, unless the defendant proves a defense or claim in recoupment. R.C. 1303.36(B). The holder can avoid certain defenses by establishing that it is a holder in due course. *Id.*; R.C. 1303.35(B). Here, P.F. Chang's challenged only the validity of the check; it did not present any evidence of a defense or claim in recoupment. Thus, upon proving holder status, Romano's would be entitled to judgment in its favor. Uniform Commercial Code Official Comment (1990), Section 3–308, Comment 2 ("In the absence of a defense or claim in recoupment, any person entitled to enforce the instrument is entitled to recover"); 4 Hawkland, Uniform Commercial Code Series (1999), Section 3–307:6 ("If the defendant fails to establish a defense, the plaintiff, having the rights of a holder, will recover"). Because P.F. Chang's failed to provide evidence of a defense, Romano's would not have to prove that it was a holder in due course in order to recover. *Arcanum Natl. Bank v. Hessler* (1982), 69 Ohio St.2d 549, 551, 433 N.E.2d 204 ("Whether one is a holder in due course is an issue which does not arise unless it is shown a defense exists"); *Bell v. Teasley,* 10th Dist. No. 10AP–850, 2011-Ohio-2744, 2011 WL 2201196, ¶ 23 (same). Consequently, much of the parties' argument, which focuses on whether Romano's was a holder in due course, is irrelevant to the resolution of this appeal.

{¶ 18} Second, instead of believing Arsalane's testimony, the trial court could reject his testimony as incredible. Without Arsalane's testimony, the misspelled signature remained the only evidence relevant to the validity of the indorsement. That evidence indicated that another person, presumably a thief, signed Garcia's name to the back of the check. As a thief is not a holder of a check made out to another person, the thief of Garcia's check could not negotiate the check. Romano's, therefore, would not be the holder and would not be entitled to recover payment from P.F. Chang's.

{¶ 19} Because it entered judgment for P.F. Chang's, the trial court necessarily chose to disbelieve Arsalane and rely, instead, on the misspelled last name to find that someone other than Garcia indorsed the check. The misspelled last

name constitutes competent, credible evidence supporting the trial court's judgment. Therefore, we conclude that the trial court did not err in entering judgment in P.F. Chang's favor.

{¶ 20} In arguing to the contrary, Romano's urges this court to find credible Arsalane's assertion that he knew Garcia because on redirect examination Arsalane again stated that he had cashed P.F. Chang's payroll checks for Garcia prior to the date of the check at issue. The trial court, not the appellate court, weighs the evidence and determines credibility. *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 24; *Seasons Coal Co.*, 10 Ohio St.3d at 81, 461 N.E.2d 1273. Given the applicable law, the trial court would have granted judgment for Romano's if it believed that Arsalane knew Garcia. Because the trial court granted judgment for P.F. Chang's, it necessarily rejected Arsalane's testimony. We cannot second-guess this credibility determination.

{¶ 21} Romano's also argues that we should reverse the trial court's judgment because it is inconsistent with a comment that the trial court made when orally pronouncing judgment at the conclusion of trial. We disagree.

{¶ 22} A court speaks exclusively through its journal, not through oral pronouncement. *Schenley v. Kauth* (1953), 160 Ohio St. 109, 113 N.E.2d 625, paragraph one of the syllabus; *State v. Hampton*, 10th Dist. No. 10AP–1109, 2011-Ohio-3486, 2011 WL 2739523, ¶ 13. Consequently, a court's oral statements have no legal force and effect unless and until the court incorporates them into a journalized entry. *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, ¶ 30; *Johnson v. Johnson*, 194 Ohio App.3d 664, 2011-Ohio-3001, 957 N.E.2d 805, ¶ 16. Standing alone, " '[a] commentary from the bench, leading up to pronouncement of a decision, is * * * [not] adequate to provide a disappointed party a solid basis on which to ground an appeal.' " *State ex rel. Papp v. James* (1994), 69 Ohio St.3d 373, 377, 632 N.E.2d 889, quoting *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 173, 492 N.E.2d 146, fn. 3. Because the trial court did not incorporate its oral commentary into the written judgment entry, that commentary has no bearing on our review of the trial court's judgment.

{¶ 23} In sum, we conclude that competent, credible evidence establishes that someone forged Garcia's signature on the check. As negotiation requires a valid endorsement, Romano's never became a holder of the check and cannot recover payment from P.F. Chang's. Accordingly, we overrule Romano's assignment of error.

{¶ 24} As a final matter, we must address P.F. Chang's motion for sanctions. Loc.R. 4(D)(2) of the Tenth District Court of Appeals provides that if a civil or administrative appeal is selected for a prehearing conference:

[U]pon seven days notice from the conference attorney, the attorneys, and the parties if requested, shall attend a prehearing conference * * * to consider the possibility of settlement, the simplification of issues, and such other matters as may aid in the disposition of the proceedings by the Court.

If an attorney fails to comply with the provisions of Loc.R. 4, this court "may assess reasonable expenses caused by the failure, including attorney fees; assess all or a portion of the appellate costs; or dismiss the appeal." Loc.R. 4(F).

{¶ 25} In letters dated December 22, 2010, this court's conference attorney informed the attorneys for both Romano's and P.F. Chang's that a prehearing conference had been scheduled for January 12, 2011, at 1:30 p.m. Although P.F. Chang's counsel appeared at the prehearing conference, Romano's counsel did not.

{¶ 26} In its motion for sanctions, P.F. Chang's requests that this court dismiss the instant appeal or assess against Romano's the expenses that P.F. Chang's incurred in bringing its motion and preparing for and attending the prehearing conference. Romano's failed to file any response to P.F. Chang's motion. However, Romano's attorney, Kevin O'Brien, addressed the matter after this court questioned him about it during oral argument. O'Brien admitted that he received the notice of the prehearing conference but due to an unintentional oversight, he failed to place the conference on his calendar.

{¶ 27} Prehearing conferences serve to clarify the issues before the court and facilitate possible settlement. The absence of either of the parties' attorneys defeats both of these important purposes. Nevertheless, because O'Brien's failure to attend the prehearing conference was unintentional, we decline to impose sanctions.

{¶ 28} For the foregoing reasons, we overrule Romano's assignment of error, and we affirm the judgment of the Franklin County Municipal Court. Additionally, we deny P.F. Chang's motion for sanctions.

Judgment affirmed,
and motion denied.

SADLER and FRENCH, JJ., concur.