[Cite as *U.S. Bank Natl. Assn. v. George*, 2020-Ohio-6758.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

U.S. Bank National Association, as Trustee, :
Successor in Interest to Wachovia Bank,
National Association as Trustee for Wells :
Fargo Asset Securities Corporation,
Mortgage Pass-Through Certificates, :
Series 2003-D,
:                              No. 20AP-43
                                                    (C.P.C. No. 12CV-13226)
Plaintiff-Appellee,
:              (REGULAR CALENDAR)
v.
:
Douglas George et al.,
:
Defendants-Appellants.
:

D E C I S I O N

Rendered on December 17, 2020

**On brief:** *Thompson Hine LLP, Scott A. King,* and *Todd M. Seaman*, for appellee. **Argued:** *Scott A. King.*

**On brief:** *McGookey Law Offices, LLC,* and *Daniel L. McGookey*, for appellants Douglas George and Robin George. **Argued:** *Daniel L. McGookey.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendants-appellants, Douglas George and Robin George, appeal from a foreclosure judgment of the Franklin County Court of Common Pleas entered in favor of plaintiff-appellee, U.S. Bank, National Association ("U.S. Bank"), as trustee, successor in interest to Wachovia Bank, National Association ("Wachovia Bank"), as trustee for the Wells Fargo Asset Securities Corporation, mortgage passthrough certificates, series 2003-D (the "trust"). For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}    On August 8, 2002, the Georges executed a promissory note and mortgage in favor of M/I Financial Corp. ("M/I Financial") in connection with their purchase of 7511 Windsor Drive, Dublin, Ohio.  Nine years later, in September 2009, U.S. Bank initiated a foreclosure action against the Georges based on their default under the terms of the note and the mortgage securing the same.  However, that action was dismissed upon the Georges' execution of a loan modification agreement on May 18, 2010.  The Georges failed to make payments under the terms of the note as amended, and on October 19, 2012, U.S. Bank again initiated a foreclosure action against them.

{¶ 3}    In September 2013, U.S. Bank moved for summary judgment.  The trial court granted U.S. Bank's summary judgment motion and then entered a foreclosure decree.  The Georges appealed from that judgment.

{¶ 4}    In December 2015, this court reversed the judgment of the trial court.  *U.S. Bank Natl. Assn. v. George*, 10th Dist. No. 14AP-817, 2015-Ohio-4957 ("*George I*").  This court found that summary judgment was erroneously entered because there existed a genuine issue of fact as to whether U.S. Bank was entitled to enforce the Georges' note.  *Id.* at ¶ 23.  U.S. Bank moved for reconsideration, which this court denied.  *U.S. Bank Natl. Assn. v. George*, 10th Dist. No. 14AP-817, 2016-Ohio-7788 ("*George II*").

{¶ 5}    On remand, a bench trial was held regarding the matter in January 2019.  The following four witnesses testified:  Jodie Kane, a loan administration manager in the specialty operations department at Wells Fargo Bank, National Association ("Wells Fargo Bank"); John Richards, a vice president in the global corporate trust and custody group at U.S. Bank; Jennifer Robinson, a loan administration manager for Wells Fargo Bank; and appellant Douglas George.  U.S. Bank introduced numerous documents into evidence, including a copy of the note it was seeking to enforce.  At trial, the Georges objected to U.S. Bank's exhibits, and the trial court requested post-trial briefing on their admissibility.  The Georges submitted written objections to U.S. Bank's trial exhibits, arguing they were irrelevant, unauthenticated, and inadmissible hearsay.

{¶ 6}    In December 2019, the trial court entered findings of fact and conclusions of law.  The trial court rejected the Georges' objections to U.S. Bank's trial exhibits and found, among other things, that U.S. Bank had proven it was a "holder" entitled to enforce the

note. (Dec. 19, 2019 Findings of Fact and Conclusions of Law.) In January 2020, the trial court entered a foreclosure decree.

{¶ 7} The Georges timely appeal.

## II. Assignments of Error

{¶ 8} The Georges assign the following errors for our review:

[1.] The trial court erred in allowing inadmissible evidence into the record.

[2.] The trial court erred in finding that plaintiff/appellee proved it was entitled to enforce the subject promissory note and awarding it foreclosure judgment.

## III. Discussion

### A. First Assignment of Error – Admission into Evidence of U.S. Bank's Trial Exhibits

{¶ 9} The Georges' first assignment of error alleges the trial court erred in admitting U.S. Bank's trial exhibits. More specifically, the Georges challenge the admission of the following: the note (Exhibit 1); the Wells Fargo Bank ICMP printout of the history of images taken of the note (Exhibit 1A); the Wells Fargo Bank image of the note uploaded on September 23, 2002 (Exhibit 1B); the Wells Fargo Bank image of the note uploaded on September 30, 2009 (Exhibit 1C); the Wells Fargo Bank image of the note uploaded on July 2, 2012 (Exhibit 1D); the Wells Fargo Bank image of the note uploaded on September 12, 2013 (Exhibit 1E); the Wells Fargo Bank collateral file tracking documents (Exhibit 4); the Wells Fargo Asset Securities Corporation (seller), Wells Fargo Bank Minnesota, National Association ("Wells Fargo Bank Minnesota") (master servicer), and Wachovia Bank (trustee) pooling and servicing agreement dated February 26, 2003 (Exhibit 5A); the mortgage loan schedule to the February 26, 2003 pooling and servicing agreement (Exhibit 5B); the November 29, 2005 purchase agreement between Wachovia Corporation and U.S. Bank (Exhibit 6A); the annex to the November 29, 2005 purchase agreement between Wachovia Corporation and U.S. Bank (Exhibit 6B); ACS deal info report (Exhibit 6C); the collateral file (Exhibit 15); and the February 26, 2003 servicing agreement between Wells Fargo Bank Minnesota and Wells Fargo Home Mortgage, Inc. ("WFHMI") (Exhibit 16). This assignment of error lacks merit.

{¶ 10} The decision to admit or exclude relevant evidence rests within the sound discretion of the trial court. *State v. Angus*, 10th Dist. No. 05AP-1054, 2006-Ohio-4455, ¶ 16, citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, a reviewing court will not disturb a ruling on the admission of evidence. *State v. Phelps*, 10th Dist. No. 14AP-4, 2015-Ohio-539, ¶ 27; *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} First, we address the admission of certain documents contained in the collateral file: the note, the loan modification agreement, the mortgage, and the mortgage assignments. The Georges argue these documents should have been excluded from evidence because they were not authenticated and were inadmissible hearsay.

{¶ 12} Evid.R. 901(A) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) sets forth a non-exhaustive list of examples of authentication or identification conforming with the requirements of the rule including testimony of a witness with knowledge that a matter is what it is claimed to be. Evid.R. 901(B)(1). "Courts have interpreted Evid.R. 901(B) to allow any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification." (Internal quotations omitted.) *State v. Ross*, 10th Dist. No. 17AP-141, 2018-Ohio-3027, ¶ 37.

{¶ 13} Certain categories of documents are "self-authenticating." *See Deutsche Bank Natl. Trust Co. v. Boreman*, 6th Dist. No. OT-18-031, 2020-Ohio-3545, ¶ 66 ("Under Evid.R. 902, certain categories of documents are designated as 'self-authenticating' documents that do not require extrinsic evidence of authenticity to be admissible."). Evid.R. 902(8) provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to * * * [d]ocuments accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public." Further, pursuant to Evid.R. 902(9), "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to * * * [c]ommercial paper,

signatures thereon, and documents relating thereto to the extent provided by general commercial law."

{¶ 14} As commercial paper, and a document relating thereto, the note and loan modification agreement were admissible without extrinsic evidence of authenticity. And because the mortgage and mortgage assignments were notarized, they were also self-authenticating. Consequently, it was not necessary for U.S. Bank to present testimony to authenticate these documents. Therefore, we reject the Georges' argument that these documents were not properly authenticated.

{¶ 15} We also reject the Georges' contention that the note, loan modification agreement, mortgage, and mortgage assignments were inadmissible hearsay. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Under the rules of evidence, a statement includes a written assertion. Evid.R. 801(A). Hearsay is generally not admissible unless it falls within one of the exceptions to the rule against hearsay. *State v. Clay*, 187 Ohio App.3d 633, 2010-Ohio-2720, ¶ 27 (5th Dist.), citing Evid.R. 802, 803-04.

{¶ 16} The note, loan modification agreement, mortgage, and mortgage assignments were not inadmissible hearsay because they "were not offered to prove the truth of the matters asserted therein; rather, they were offered to prove that persons engaged in transactions creating legal rights and responsibilities." (Internal quotation omitted.) *Christiana Trust v. Barth*, 9th Dist. No. 16CA010959, 2017-Ohio-6924, ¶ 10 ("the note, the mortgage, [and] the assignment of the mortgage * * * are not hearsay"). *See* Staff Note to Evid.R. 801(C) ("Words constituting conduct are not hearsay, e.g., words of a contract."). Therefore, these documents were not inadmissible hearsay.

{¶ 17} We also reject the Georges' challenge to the admission of Wells Fargo Bank's EMB Trust, Arrow, and ICMP records. Testimony at trial indicated Wells Fargo Bank's EMB Trust system documents when the "collateral file leaves the vault and when it's returned to the vault," its Arrow system "tracks the movement of the file after it leaves the vault until it is returned to the vault," and its ICMP system documents the imaging of the note at various points in time. (Jan. 14, 2019 Tr. at 57-58.) Thus, collectively, these exhibits reflect Wells Fargo Bank's electronic recordkeeping as to the loan and related documents.

The Georges contend these exhibits should not have been admitted into evidence because the trial witnesses were not qualified to authenticate them.  We disagree.

{¶ 18}  Pursuant to Evid.R. 901(B)(10), "authentication of business records * * * is governed by Evid.R. 803(6)," which sets forth an exception to the hearsay rule for business records of regularly conducted activity.  *Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, ¶ 9 (1st Dist.).   Evid.R. 803(6) provides an exception to the hearsay evidence prohibition for records of "regularly conducted business activity * * * if it was the regular practice of that business activity to make the * * * record * * * as shown by the testimony of the custodian or other qualified witness."  To qualify for admission under Evid.R. 803(6), a business record must satisfy four essential elements: (1) it must be one regularly recorded in a regularly conducted activity, (2) it must have been entered by a person with knowledge of the act, (3) it must have been recorded at or near the time of the transaction, and (4) a foundation must be laid by the custodian of records or some other qualified witness.  *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 39.  A qualified witness is someone with enough familiarity with the record-keeping system of the business to explain how the record came into existence in the ordinary course of business.  *Id.*  However, "Evid.R. 803(6) does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document or of the transaction giving rise to the record."  (Internal quotations omitted.)  *Cach v. Alderman*, 10th Dist. No. 15AP-980, 2017-Ohio-5597, ¶ 16.

{¶ 19}  Jodie Kane, a loan administration manager for Wells Fargo Bank, testified regarding the bank's collateral file recordkeeping practices.  The collateral file always contains the original note and may, as in this case, contain other documents pertaining to the note.  She testified that Wells Fargo Bank keeps collateral files in a vault in Minnesota.  She also testified that Wells Fargo Bank maintains electronic records regarding collateral files as part of its ordinary course of business, that those records are created by Wells Fargo Bank personnel who are under a business duty to timely and accurately enter information into the records, and that those employees have personal knowledge of the information they enter into the bank's computer system at or near the time of the events reflected.  She further testified regarding the contents of the printed documents from Wells Fargo Bank's

computer systems and indicated they accurately reflected the information stored on those systems. We find Kane's testimony demonstrated that she was sufficiently familiar with Wells Fargo Bank's recordkeeping practices and that its business records produced at trial reasonably met the requirements of Evid.R. 803(6) to be admissible as an exception to the hearsay rule. Thus, we conclude the trial court did not abuse its discretion in admitting Wells Fargo Bank's EMB Trust, Arrow, and ICMP records.

{¶ 20} The Georges also contend the February 26, 2003 pooling and servicing agreement, involving Wells Fargo Asset Securities Corporation (seller), Wells Fargo Bank Minnesota (master servicer), and Wachovia Bank (trustee), and a related mortgage schedule, should not have been admitted into evidence as business records under Evid.R. 803(6). They additionally argue this pooling and servicing agreement was not relevant to the issues at trial. We are unpersuaded.

{¶ 21} John Richards, a vice president in U.S. Bank's global corporate trust and custody group, testified as to his familiarity with U.S. Bank's recordkeeping practices regarding loan securitizations. Richards testified that U.S. Bank maintains agreements regarding securitizations in its ordinary course of business and its employees are under a duty to timely and accurately upload such documents into its computer system. He further testified that the documents printed for trial accurately reflected those stored on U.S. Bank's computer system. Similarly, Jennifer Robinson, a loan administration manager for Wells Fargo Bank, testified that Wells Fargo Bank, in the ordinary course of its business, maintains a computer system for imaging documents such as the pooling and servicing agreement. Wells Fargo Bank employees are under a duty to timely and accurately enter the information into the computer system, and the printouts from its business records accurately reflected the information on its system. The testimony of Richards and Robinson reasonably demonstrated the pooling and servicing agreement and the related mortgage schedule were business records and not inadmissible hearsay.

{¶ 22} We also reject the Georges' argument that the pooling and servicing agreement was not relevant to the issues at trial. The Georges correctly observe that the pooling and servicing agreement identifies Wells Fargo Asset Securities Corporation as the seller of the loans in the trust to Wachovia Bank, as trustee. They therefore reason that the note should have contained an indorsement from Wells Fargo Asset Securities Corporation

to Wachovia Bank, not an indorsement from WFHMI to Wachovia Bank as it exists on the note. According to them, the absence of Wells Fargo Asset Securities Corporation on the note renders the pooling and serving agreement irrelevant to the issues in this case. But the pooling and servicing agreement itself expressly authorized the indorsement directly from WFHMI to Wachovia Bank, as made on the note. Thus, the pooling and servicing agreement was relevant to the issues at trial.

{¶ 23} We next address the Georges' contention that the purchase agreement documents relating to U.S. Bank's acquisition of certain Wachovia Corporation businesses should not have been admitted. They argue these documents were irrelevant. This argument is premised in part on the Georges' contention regarding Wells Fargo Asset Securities Corporation being identified as the seller of the loans in the trust to Wachovia Bank on the pooling and servicing agreement. But as discussed above, that contention is not persuasive as the agreement itself authorized a negotiation of loans from WFHMI to Wachovia Bank. The Georges also assert the purchase agreement was between U.S. Bank and Wachovia Corporation, not U.S. Bank and Wachovia Bank, and thus U.S. Bank's acquisition of Wachovia Bank businesses cannot be assumed. But the Georges' assertion is belied by the purchase agreement itself. The purchase agreement identifies Wachovia Bank as a wholly owned subsidiary of Wachovia Corporation and one of the sellers under the agreement. Consistent with the terms of the purchase agreement, Richards testified at trial that U.S. Bank acquired the corporate trust business of Wachovia Bank. In view of this evidence, we find the trial court did not abuse its discretion in admitting the purchase agreement and related documents.

{¶ 24} Lastly, the Georges contend the trial court erred in admitting the servicing agreement between Wells Fargo Bank Minnesota and WFHMI. They argue the servicing agreement is irrelevant in this case because it does not show the Georges' obligation was transferred to U.S. Bank and there is no reference to the trust at issue in the servicing agreement. However, under the terms of the servicing agreement, WFHMI, which was later acquired by Wells Fargo Bank, was the servicer of the trust at issue. While the servicing agreement itself does not show the transfer of the Georges' loan to the trust, it still was relevant as it was pertinent to the servicing of the Georges' loan. Thus, the trial court did not abuse its discretion in admitting the servicing agreement.

{¶ 25} For these reasons, we overrule the Georges' first assignment of error.

**B.  Second Assignment of Error – U.S. Bank's Entitlement to Enforce the Note and Mortgage**

{¶ 26} In their second assignment of error, the Georges contend the trial court erred in finding U.S. Bank proved its entitlement to enforce the note and mortgage.  This assignment of error is not well-taken.

{¶ 27} A promissory note secured by a mortgage is a negotiable instrument.  *Bank of Am., N.A. v. Pasqualone*, 10th Dist. No. 13AP-87, 2013-Ohio-5795, ¶ 29.  Pursuant to R.C. 1303.31(A), a "person entitled to enforce" such a promissory note includes the "holder" of the instrument.  "[F]or U.S. Bank to qualify as a 'holder' of the note (and thereby be a person entitled to enforce the instrument as set forth in R.C. 1303.31(A)(1)), it must have both possession of the note, and the note must be indorsed either in blank to the bearer or specifically to the one presenting it (U.S. Bank)."  *George II* at ¶ 19, citing former R.C. 1301.01(T)(1)(a) and (b) (2002) (currently set forth in R.C. 1301.201(B)(21)(a)).

{¶ 28} Here, the trial court found that U.S. Bank, through its agent Wells Fargo Bank, had possession of the note at the time of trial, and that the note contains an indorsement making it payable to U.S. Bank.  Consequently, the trial court concluded that U.S. Bank qualifies as a holder of the note.  The Georges contend the trial court erred in reaching this conclusion.  They argue U.S. Bank did not prove its possession of the note because the evidence did not track the physical location of the note at all times.  According to the Georges, U.S. Bank needed to show the note's chain of custody to prove its possession of the note.  The Georges also allege U.S. Bank failed to prove the note's chain of transfer.

{¶ 29} In addressing the possession issue, we first acknowledge that in *George II* this court stated that the deposition testimony of John McCray, a records custodian for Wells Fargo Bank, did not include "any semblance of a chain of custody as to how the purported original note came to be at the deposition for his identification of it."  *Id.* at ¶ 17.  This statement was in the context of a discussion regarding U.S. Bank's argument that the evidence undisputedly showed that it had possession of the original note "because it was putatively produced at [McCray's] deposition."  *Id.*  The Georges cite this "chain of custody" observation as the basis for their assertion that U.S. Bank, in order to prove its possession of the original note, needed to prove the physical location of the original note at all times.

We are unconvinced. This statement was not essential to this court's resolution of U.S. Bank's application for reconsideration of this court's decision reversing the trial court's granting of summary judgment. In reversing the award of summary judgment, this court concluded that a genuine question of fact existed as to whether U.S. Bank is entitled to enforce the note. *George I.* The summary judgment evidence contained discrepancies as to the indorsement status of the version of the note in U.S. Bank's possession, thus creating a genuine issue of fact as to whether U.S. Bank was a holder entitled to enforce the note. *George I.*

{¶ 30} Further, " '[c]hain of custody' is only an evidentiary tool to establish identity of some item of personal property. [For example,] [i]t often becomes important in criminal drug cases to establish that the suspected substance submitted to a laboratory test is the identical substance found in the possession of a person charged with a drug offense." *Hawkins v. Marion Corr. Inst.*, 62 Ohio App.3d 863, 871 (3d Dist.1990); *see State v. Thompson*, 11th Dist. No. 2018-P-0099, 2020-Ohio-67, ¶ 92. Demonstrating a chain of custody in a criminal case enables the state to show the personal property has been in its continuous possession, thus proving its authenticity and "eliminating the possibility that the item has been tampered with or altered from its original form." *State v. Bowling*, 8th Dist. No. 93052, 2010-Ohio-3595, ¶ 32. Thus, a "chain [of custody] is needed only when an item is by nature fungible and indistinguishable, having no unique characteristics, like a pill." (Internal quotations omitted.) *State v. Ramos*, 2d Dist. No. 28214, 2019-Ohio-3588, ¶ 23.

{¶ 31} Here, the original note was produced at trial and a copy of that note was admitted into evidence. Appellant Douglas George acknowledged at trial that this note contains his signature and the signature of his wife, appellant Robin George. While the Georges generally challenged U.S. Bank's possession of the note, they presented no evidence at trial in support of their contention. As noted above, their challenge to the trial court's possession finding is essentially premised on their assertion that U.S. Bank did not prove the physical location of the note at all times before the lawsuit. But the note has identifiable characteristics. Namely, it contains the Georges' acknowledged signatures. And there was no evidence the note had been altered in any way since the Georges signed

it. Therefore, the Georges fail to show the trial court erred in finding U.S. Bank, through its agent Wells Fargo Bank, possessed the original note.

{¶ 32} We also reject the Georges' chain of transfer argument. Demonstrating the chain of transfer is one of the necessary elements a plaintiff must prove in a foreclosure action. *CitiMortgage, Inc. v. Taylor*, 10th Dist. No. 15AP-726, 2016-Ohio-8337, ¶ 18. "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course." R.C. 1303.22(B). "Negotiation" means "a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument." R.C. 1303.21(A). "An instrument, when specially indorsed, becomes payable to the identified person and may be negotiated only by the indorsement of that person." R.C. 1303.25(A). An "indorsement" is "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words" serves to "negotiate" the instrument. R.C. 1303.24(A)(1).

{¶ 33} R.C. 1303.36(A) provides that, "[u]nless specifically denied in the pleadings, in an action with respect to an instrument, the authenticity of, and authority to make, each signature on an instrument is admitted." If the defendant makes this specific denial, the burden of establishing validity is on the plaintiff. *Romano's Carryout, Inc. v. P.F. Chang's China Bistro, Inc.*, 196 Ohio App.3d 648, 2011-Ohio-4763, ¶ 13 (10th Dist.). However, while the plaintiff then carries the burden, there is a "rebuttable presumption that the signature is authentic and authorized." *Id. See Deutsche Bank Natl. Trust Co. v. Sopp*, 10th Dist. No. 14AP-343, 2016-Ohio-1402, ¶ 15, quoting *Bates & Springer, Inc. v. Stallworth*, 56 Ohio App.2d 223 (8th Dist.1978), paragraph five of the syllabus (" 'The signature [on an instrument] is presumed genuine and authorized, but this presumption is rebuttable and may be overcome by evidence to the contrary.' ").

{¶ 34} The note U.S. Bank attached to its complaint and produced at trial was first indorsed by the lender, M/I Financial, to WFHMI. WFHMI indorsed the note to "Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as

of February 26, 2003."  (Pl.'s Trial Ex. PX-1 at 5.)  And an allonge[1] to the note bears an indorsement to U.S. Bank, "as trustee, successor in interest to Wachovia Bank * * * by Wells Fargo Bank, N.A. its attorney in fact."  (Ex. PX-1 at 6.)  In their answer, the Georges did not specifically deny the authenticity of any signature or any person's authority to make any of the indorsements.  Thus, pursuant to R.C. 1303.36(A), authenticity and authority as to the indorsements on the note were admitted.  And even if they were not deemed admitted, the Georges failed to overcome the rebuttable presumption of authenticity and authority that attached to the signatures.

{¶ 35}  The Georges argue U.S. Bank is not entitled to enforce the note because the indorsement from WFHMI to Wachovia Bank occurred after WFHMI ceased to exist.  They contend this circumstance invalidated the transfer and created a break in the chain of transfers.  The indorsement from WFHMI to Wachovia Bank occurred sometime between September 23, 2002, and September 30, 2009.  The image of the note taken on September 23, 2002, only contained the indorsement from M/I Financial to WFHMI, and the image taken on September 30, 2009, included the indorsement from WFHMI to Wachovia Bank, as trustee for the trust.  Evidence in the record further established that, on May 8, 2004, Wells Fargo Bank acquired WFHMI.  The Georges assert that pursuant to the pooling and servicing agreement, the indorsement to Wachovia Bank should have occurred by February 26, 2003, but testimony at trial suggested the 2009 image of the note was taken soon after that indorsement.  The Georges further assert that, if that indorsement was made after WFHMI ceased to exist, U.S. Bank needed to demonstrate proof of value paid by Wachovia Bank under the "curative indorsement rule" of R.C. 1303.22(C), and that U.S. Bank did not meet that burden.  But this assertion does not account for the principle that they had to present evidence to overcome the rebuttable presumption of validity that attached to the signature.  Moreover, the trial court, as the finder of fact, could evaluate and resolve any discrepancies in the evidence regarding the timing of the indorsement from WFHMI to Wachovia Bank.  Therefore, considering the evidence produced at trial, it was

---

[1] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Black's Law Dictionary* 88 (9th Ed.2009).  *See* R.C. 1303.24(A)(2) (An allonge is considered part of the instrument being indorsed if it is "affixed to the instrument.").

reasonable for the trial court to conclude the indorsement from WFHMI to Wachovia Bank was valid.

{¶ 36} The Georges also argue there was a break in the chain of transfers because there was no indorsement from Wachovia Bank to U.S. Bank. The evidence at trial, however, demonstrated U.S. Bank became the successor trustee to the trust at issue based on U.S. Bank's acquisition of Wachovia Bank's corporate trust business. Thus, the absence of an indorsement from Wachovia Bank to U.S. Bank on the note does not constitute a break in the chain of transfer.

{¶ 37} Accordingly, we conclude the trial court did not err in finding U.S. Bank qualifies as a holder entitled to enforce the note. And as the holder of the note, U.S. Bank is also entitled to enforce the mortgage. *See Bank of New York Mellon v. Primes*, 8th Dist. No. 105678, 2018-Ohio-1833, ¶ 9 (the "current holder of the promissory note is entitled to enforce the mortgage lien."); *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. No. 98502, 2013-Ohio-1657, ¶ 65 ("[U]nder Ohio law, the mortgage 'follows the note' it secures."); *U.S. Bank Natl. Assn. v. Marcino*, 181 Ohio App.3d 328, 2009-Ohio-1178, ¶ 52 (7th Dist.) (Internal citations omitted.) (Ohio has long recognized "that whenever a promissory note is secured by a mortgage, the note constitutes the evidence of the debt, and the mortgage is a mere incident to the obligation. Therefore, the negotiation of a note operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered.").

{¶ 38} Because the trial court did not err in concluding U.S. Bank is entitled to enforce both the note and mortgage, we overrule the Georges' second assignment of error.

## IV. Disposition

{¶ 39} Having overruled the Georges' first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and BROWN, J., concur.

———————————