[Cite as *Deutsche Bank Natl. Trust Co. v. Boreman*, 2020-Ohio-3545.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Deutsche Bank National Trust Company,      Court of Appeals No. OT-18-031
as Certificate Trustee on Behalf of
Bosco Credit II Trust Series 2010-1      Trial Court No.  2017-CV-E-429

      Appellee

v.

Wade Boreman, et al.      **DECISION AND JUDGMENT**

      Appellant      Decided:  June 30, 2020

* * * * *

James W. Sandy, for appellee.

Marc E. Dann, Brian D. Flick and William C. Behrens,
for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Wade Boreman, appeals the July 26, 2018 judgment of the

Ottawa County Court of Common Pleas that granted summary judgment to appellee, U.S.

Bank National Association, not in its individual capacity but solely as trustee NRZ-pass

through trust X ("U.S. Bank"), and the August 9, 2019 judgment that granted U.S. Bank's Civ.R. 60(A) motion to correct a clerical error in the July 26 entry. For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} On July 14, 2005, Boreman signed two notes in favor of MILA, Inc. The first note ("note 1") was for $112,560 and was secured by a mortgage ("mortgage 1") on Boreman's property at 315 West Ottawa Street in Oak Harbor. The second note ("note 2") was for $28,140 and was also secured by a mortgage ("mortgage 2") on the Ottawa Street property. Note 2 was subordinate to note 1, and mortgage 2 was subordinate to mortgage 1.

{¶ 3} On October 19, 2017, appellee, Deutsche Bank National Trust Co., as certificate trustee on behalf of BOSCO Credit II Trust Series 2010-1 ("Deutsche"), filed a complaint in foreclosure alleging that it owned note 2 and mortgage 2 and that Boreman was in default of the terms of the note and mortgage. Among others, Deutsche named Nationstar Mortgage LLC as a defendant, alleging that Nationstar might claim an interest in the Ottawa Street property.

{¶ 4} On December 20, 2017, Nationstar filed a motion seeking to substitute "Citibank, N.A., not in its Individual Capacity but Solely as Trustee of NRZ Pass-Through Trust VI" ("Citibank") as a defendant in the case because the mortgage had been assigned to Citibank and Citibank was the proper party to the action. The trial court granted the motion and substituted Citibank as a defendant on December 28, 2017.

2.

{¶ 5} On April 10, 2018, Citibank filed an amended answer, crossclaim, and counterclaim. In its crossclaim, Citibank alleged that it owned note 1 and mortgage 1, and that Boreman was in default of the terms of the note and mortgage.

{¶ 6} To show that it had the right to enforce note 1 and mortgage 1, Citibank included numerous documents with its amended answer, crossclaim, and counterclaim. First was note 1, i.e., a note in favor of MILA for $112,560 signed by Boreman on July 14, 2005. The note included an undated, blank indorsement from MILA.

{¶ 7} The second document was a loan modification agreement, dated January 17, 2008, between Boreman and Wilshire Credit Corp. ("Wilshire"), as "owner or servicer" of the loan.

{¶ 8} Third was a loan modification agreement between Boreman and BAC Home Loans Servicing, LP ("BAC"), dated September 17, 2010. In addition to Boreman's signature page, the agreement includes two signature pages, each dated December 6, 2012. The first is a signature from "Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP / By: Stewart Lender Services, Inc., its attorney in fact." The second is a signature from "Mortgage Electronic Registration Systems, Inc. (MERS), / as Nominee for Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP."

{¶ 9} The fourth document included with the amended answer, crossclaim, and counterclaim was a loan modification agreement, dated June 11, 2013, between Boreman and Select Portfolio Servicing, Inc. ("SPS"), as "Lender or Servicer" of the loan.

3.

**{¶ 10}** Next, Citibank attached mortgage 1, i.e., a mortgage on the Ottawa Street property, signed by Boreman on July 14, 2005, as security for note 1.

**{¶ 11}** Finally, Citibank attached the following series of assignments of mortgage 1:

| Date | Assignor | Assignee |
|---|---|---|
| August 10, 2009 | "Mortgage Electronic Registration Systems, Inc. as Nominee for MILA INC. * * *" | "The Bank of New York Mellon Trust Company, National Association f/k/a The Bank of New York Trust Company, N.A., as successor to JPMorgan Chase Bank, National Association, as Trustee for the MLMI SURF Trust Series 2005-BC4." ("BONY") |
| June 5, 2012 | "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MILA, INC." | "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF THE MLMI SURF TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2005-BC4." |
| July 30, 2013 | "Bank of America, N.A." | "NATIONSTAR MORTGAGE, LLC." |

4.

| November 17, 2017 | "THE BANK OF NEW YORK MELLON TRUST COMPANY, NA FKA THE BANK OF NEW YORK TRUST COMPANY NA AS SUCCESSOR TO JPMORGAN CHASE BANK, NA, AS TRUSTEE FOR THE MLMI SURF TRUST SERIES 2005-BC4, BY NATIONSTAR MORTGAGE LLC AS IT'S [sic] ATTORNEY-IN-FACT" | "CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI" |

Included with the November 2017 assignment was a limited power of attorney from "The Bank of New York Mellon Trust Company, N.A. as successor-in-interest to all permitted successors and assigns of JPMorgan Chase Bank, National Association" giving Nationstar power of attorney to, among other things, assign mortgages and notes in certain "Pooling and Servicing Agreements" (including those in SURF Trust Series 2005-BC4) in connection with the sale of those mortgages and notes.

{¶ 12} On May 14, 2018, Citibank moved for summary judgment. Citibank argued that it was entitled to enforce note 1 and mortgage 1, and that Boreman breached the terms of the note and mortgage by failing to make payments on the debt after September 1, 2015.

{¶ 13} Attached to Citibank's motion was the affidavit of Hugh Zhao, a "Document Execution Associate of Nationstar Mortgage LLC * * *." He averred that Nationstar "services and maintains records for the loan that is secured by the mortgage being foreclosed in this action in its capacity as Defendant U.S. Bank National

5.

Association, not in its individual capacity but solely as Trustee NRZ Pass-Through Trust X's servicer." He said that he had personal knowledge of the facts in his affidavit from reviewing Nationstar's records and had personal knowledge of Nationstar's procedures for creating and maintaining business records. Following a heading reading, "If Nationstar relies on prior servicer records, include the following language as a separate paragraph," Zhao said that "[b]efore the servicing of this loan transferred to Nationstar, SPS (Prior Servicer) was the servicer for the loan and it maintained the loan servicing records." He went on to say that Nationstar incorporated SPS's records into its own recordkeeping system, and that Nationstar relied on SPS's records in providing its loan servicing functions. Zhao specifically averred that "U.S. Bank National Association, not in its individual capacity but solely as Trustee NRZ Pass-Through Trust X directly or through an agent, has possession of the promissory note and held the note at the time of filing the answer. The promissory note has been duly indorsed."

{¶ 14} In addition to his testimony, Zhao included several documents with his affidavit. He averred that the documents were "true and correct copies of documents electronically stored in Nationstar's business records * * *." Attached to the affidavit were (1) note 1 with a blank indorsement from MILA; (2) mortgage 1; (3) a January 26, 2018 assignment of mortgage listing "CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY IN FACT" as the assignor and "U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY

6.

BUT SOLELY AS TRUSTEE NRZ PASS-THROUGH TRUST X" as the assignee, along with a limited power of attorney from "CITIBANK, N.A., not in its individual capacity but solely as Trustee on behalf of NRZ Pass-Through Trust VI" giving Nationstar power of attorney to, among other things, assign mortgages and notes on Citibank's behalf; (4) the June 11, 2013 loan modification agreement between Boreman and SPS; (5) the September 17, 2010 loan modification agreement between Boreman and BAC; (6) the January 17, 2008 loan modification agreement between Boreman and Wilshire; (7) two default notices sent to Boreman on April 5, 2016; and (8) Boreman's payment history.

{¶ 15} In his June 6, 2018 response to Citibank's motion, Boreman first argued that summary judgment was not appropriate because Citibank was not the proper party to enforce the note and mortgage. Citibank assigned the note and mortgage to U.S. Bank in January 2018. Consequently, Citibank could not prove that it was the party entitled to enforce the note and mortgage.

{¶ 16} Boreman also claimed that there were numerous issues with Zhao's affidavit. First, he argued that Zhao was not authorized to testify on behalf of Citibank because his testimony related to the records Nationstar maintained on behalf of U.S. Bank—not Citibank—which made Zhao's affidavit completely inadmissible as it related to Citibank's motion for summary judgment. Next, Boreman argued that Zhao failed to explain Citibank's ability to enforce the note and mortgage. Zhao did not attest that Citibank had possession of the note or that there was an agency relationship between

7.

Citibank (which was pursuing foreclosure) and U.S. Bank (on whose behalf Zhao testified) that would allow Citibank to enforce the note. As to the mortgage, Boreman said that a party is required to provide admissible evidence of its ability to enforce a mortgage to survive summary judgment, but Zhao did not provide any testimony "as to any party having an enforceable interest in the Mortgage."

{¶ 17} Further, Boreman argued that Zhao did not properly authenticate Nationstar's business records because he provided contradictory testimony about whether Nationstar relied on its own records or a prior servicer's records. Boreman also noted that the payment history attached to Zhao's affidavit showed that at least three companies—SPS, BAC, and Wilshire—serviced Boreman's loan, but Zhao did not provide any "specific, clear testimony" about Nationstar's integration of BAC's or Wilshire's records into Nationstar's records.

{¶ 18} Next, Boreman argued that Zhao's affidavit did not authenticate the note and mortgage because Zhao did not testify that he compared the copies of the note and mortgage attached to his affidavit with the original note and mortgage. Boreman said that, because the copies were redacted, "triable issues of fact remain as to whether what is in Nationstar's business records are exact copies of the original."

{¶ 19} Boreman went on to argue that Citibank failed to present admissible evidence of the balance due on note 1 because the payment history attached to Zhao's affidavit lacked trustworthiness. He noted that Zhao was unclear in his affidavit about which integrated records he relied on and that there were "4 different types" of payment

8.

histories, but only one of the types appeared to come from Nationstar, and Zhao failed to lay a foundation for the admission of records from servicers other than Nationstar.

{¶ 20} Boreman's last argument regarding Zhao's affidavit was that it failed to show that Citibank properly sent Boreman a notice of default and acceleration. He said that the letters included with Zhao's affidavit did not refute his claimed defense that Citibank failed to send the notice of default and acceleration in the manner required by the note and mortgage and created a triable issue regarding whether Citibank correctly listed the amount required to cure the default in its letter. He also argued that Zhao's affidavit was unreliable regarding the notice of default because he did not specifically aver that he reviewed Nationstar's business records to verify when the letter was sent to Boreman.

{¶ 21} Boreman's final argument against summary judgment was that that genuine issues of material fact remained regarding the chain of assignments of note 1 and mortgage 1. Although Boreman acknowledged that Citibank attached a complete chain of assignments from MILA to Citibank to its amended answer, crossclaim, and counterclaim, he argued that Citibank's failure to attach all of the assignments to its motion for summary judgment resulted in "triable issues of law and fact remain[ing] as to whether Citibank has presented admissible evidence as to how it is entitled to enforce the mortgage based on the assignments that it has presented in this Motion versus what is [sic] previously been in the record but Mr. Zhou [sic] has not authenticated * * * ."

9.

{¶ 22} On June 19, 2018, Citibank filed a motion seeking to substitute "U.S. Bank National Association, not in its individual capacity but soley [sic] as trustee NRZ-pass through trust X" as a defendant in the case because Citibank had sold note 1 and mortgage 1 to U.S. Bank and no longer had an interest in the litigation. On July 3, 2018, Citibank amended the motion to correct the typographical error in the June 19 motion. The trial court granted the amended motion and substituted U.S. Bank as a defendant on July 6, 2018.

{¶ 23} On July 9, 2018, Citibank filed its reply in support of summary judgment.[1] It noted that the trial court had substituted U.S. Bank as a defendant in the case, which rendered moot the "vast majority" of Boreman's arguments. It also argued that Zhao's affidavit was sufficient to meet U.S. Bank's burden under Civ.R. 56 because it established that (1) Boreman executed note 1 and mortgage 1, (2) U.S. Bank had possession of note 1, (3) Boreman defaulted on the note, (4) Nationstar, U.S. Bank's agent, sent Boreman a notice of default and acceleration per the terms of the note and mortgage, (5) Boreman failed to cure the default, and (6) Boreman owed a certain amount under the note.

{¶ 24} Additionally, Citibank argued that Boreman failed to present evidence rebutting the information in Zhao's affidavit. Specifically, Citibank argued that U.S. Bank provided assignments showing that it was the real party in interest entitled to

---

[1] Although Citibank was no longer a defendant after July 6, 2018, it—not U.S. Bank—filed the reply in support of Citibank's motion for summary judgment.

10.

enforce the note and mortgage. It also said that Zhao properly authenticated the records attached to his affidavit because he averred that he made the affidavit based on his personal knowledge and averred that the note and mortgage attached to his affidavit were "true and correct copies electronically stored in Nationstar's business records * * *." Regarding Boreman's argument that Zhao was unclear about which records he relied on, Citibank said that Zhao "explicitly averred" that Nationstar integrated the records from the "Prior Servicer" (i.e., SPS) and there is no requirement that an affiant "meticulously describe a chronology of each and every prior entity that may have, at one time, produced business records for the subject loan." Next, Citibank claimed that Zhao's affidavit showed that Nationstar sent a notice of default and acceleration in accordance with the terms of the note and mortgage. Finally, Citibank argued that Zhao's affidavit established the amount due under the note because the payment history attached to the affidavit was one of the records that Nationstar integrated into its business records when it took over from SPS, and there was no requirement that Nationstar create the payment records itself.

{¶ 25} On July 26, 2018, the trial court granted summary judgment to "CitiBank, N.A., not in its Individual Capacity but solely as Trustee of NRZ Pass-Through Trust VI." On July 19, 2019, U.S. Bank filed a motion under Civ.R. 60(A) asking the trial court to amend the July 26, 2018 entry to correct a clerical error, i.e., to change the party to which the trial court granted judgment from Citibank to U.S. Bank. On August 9,

2019, the trial court granted U.S. Bank's motion and amended the judgment entry of foreclosure.

{¶ 26} Boreman now appeals, raising two assignments of error:

FIRST ASSIGNMENT OF ERROR[:] The Trial Court erred in relying upon the Affidavit of Hugh Zhao when granting CitiBank, N.A.'s Motion for Summary Judgment.

SECOND ASSIGNMENT OF ERROR: The Trial Court erred in Granting Citibank's Motion for Summary Judgment as the Plaintiff not meet [sic] its remaining evidentiary burdens under Civ. R. 56(C).

## II. Law and Analysis

{¶ 27} In his first assignment of error, Boreman argues that the trial court erred by granting summary judgment to Citibank based on Zhao's affidavit because Zhao was authorized to testify on behalf of U.S. Bank—not Citibank. U.S. Bank counters that Zhao's affidavit complied with Civ.R. 56(E) because he "established his personal knowledge to testify on behalf of U.S. Bank even though the Motion was filed by CitiBank." U.S. Bank also argues that Citibank's motion for summary judgment was not a "'nullity' simply because it was filed by CitiBank after it had transferred its interest in the Loan."

{¶ 28} In his second assignment of error, Boreman argues that U.S. Bank did not meet its evidentiary burden under Civ.R. 56 because (1) Zhao did not authenticate Nationstar's business records, (2) Zhao did not authenticate the note and mortgage,

(3) Zhao did not present admissible evidence that the notice of default and acceleration was properly sent to Boreman, (4) Zhao's affidavit did not present admissible evidence of the balance due under the note, and (5) the chain of assignments did not establish that Citibank had a right to enforce the mortgage.

{¶ 29} U.S. Bank responds that (1) Zhao properly authenticated the documents attached to his affidavit; (2) Zhao established all conditions precedent to foreclosure, and Boreman did not point to any contrary evidence that demonstrated a genuine issue of material fact; (3) Zhao's affidavit established the amount due and owing under the note, and Boreman did not present any contrary evidence that demonstrated a genuine issue of material fact; and (4) all assignments are in the record and properly authenticated.

{¶ 30} An appellate court reviews summary judgment de novo, employing the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The court can grant a motion for summary judgment only when the moving party demonstrates:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless*

13.

*v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46

(1978); Civ.R. 56(C).

In a foreclosure case, the party seeking to foreclose must support its motion for summary judgment with evidentiary-quality materials showing: (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the note and mortgage; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent to foreclosure have been met; and (5) the amount of principal and interest due under the note. *Lakeview Loan Servicing, LLC v. Amborski*, 6th Dist. Lucas No. L-14-1242, 2016-Ohio-2978, ¶ 28.

{¶ 31} The party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). The opposing party must do so using "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." Civ.R. 56(C). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio

14.

App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 827, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Zhao was competent to testify to the facts in his affidavit.

{¶ 32} Boreman first argues that Zhao's affidavit was inadmissible because he was not authorized to testify on behalf of Citibank. We disagree.

{¶ 33} Under Civ.R. 56(E),

[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit.

Generally, unless controverted by other evidence, an affiant's statement that he is making the affidavit based on his personal knowledge is sufficient to show that he is competent to testify to the matters in the affidavit. *U.S. Bank Natl. Assn. v. Downs*, 6th Dist. Erie No. E-15-062, 2016-Ohio-5360, ¶ 20.

{¶ 34} Boreman does not dispute that Zhao averred that he made the affidavit based on his personal knowledge. Boreman argues, however, that Zhao's affidavit is nonetheless inadmissible because Zhao was competent to testify about U.S. Bank's records, not Citibank's records, and the affidavit was submitted on behalf of Citibank.

15.

Boreman did not provide any legal authority supporting this position, and we were not able to find any.

{¶ 35} Boreman makes a passing comment in his appellate brief that the entire summary judgment motion (which would necessarily include the Zhao affidavit) was a "nullity" because it was filed by Citibank, rather than the real party in interest, U.S. Bank.[2] Boreman did not, however, make any arguments either in the trial court or on appeal relating to the summary judgment motion being a "nullity" or regarding Citibank's or U.S. Bank's standing.[3] Regardless, we struggle to understand how the truthfulness and accuracy of Zhao's statements are somehow impugned simply because he is an agent of U.S. Bank (the real party in interest) rather than Citibank. Moreover, the fact that Nationstar was the servicer for U.S. Bank, not Citibank—standing alone—is not the type of evidence that calls an affiant's competence to testify under Civ.R. 56(E) into question.

---

[2] In his statement of facts, Boreman states that "[t]he [summary judgment] motion filed by Citi on May 14, 2018 is a nullity, as at the time it was filed, Citi held no interest in the Note or Mortgage, and lacked standing to seek judgment."

[3] Even if he had made this argument in the trial court or developed this argument on appeal, it is meritless on its face. If a party's interest in a case is transferred during the course of the litigation, Civ.R. 25(C) controls the substitution of the parties. The rule provides that "the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." That is, substitution of the parties is discretionary with the trial court, and either the original party *or* the new party can litigate the case. *Waterfall Victoria Master Fund 2008-1 v. Rittenhouse*, 2018-Ohio-1791, 111 N.E.3d 883, ¶ 20-21 (5th Dist.). So the fact that Citibank filed the motion for summary judgment after it transferred its interest in the note and mortgage to U.S. Bank does not make the motion a "nullity."

16.

*Compare HSBC Mtge. Servs., Inc. v. Edmon*, 6th Dist. Erie No. E-11-046, 2012-Ohio-4990, ¶ 13-21 (affiant's averment that she was testifying based on personal knowledge of homeowner's account was rebutted by her contradictory deposition testimony regarding whether she saw original note or only a scanned copy of the note). It is well established that "'the affidavit of a loan servicing agent employee with personal knowledge provides sufficient evidentiary support for summary judgment in favor of the mortgagee.'" *Fannie Mae v. Bilyk*, 10th Dist. Franklin No. 15AP-11, 2015-Ohio-5544, ¶ 11, quoting *Fifth Third Mtge. Co. v. Salahuddin*, 10th Dist. Franklin No. 13AP-945, 2014-Ohio-3304, ¶ 15.

{¶ 36} Here, Zhao specifically averred that he had "personal knowledge of the facts in [the] affidavit," which established his competence under Civ.R. 56(E) to testify to the facts related to Boreman's loan. The burden then shifted to Boreman to show that a genuine issue of material fact remained by pointing to evidence contradicting Zhao's competence to testify. Although he pointed out that Zhao was testifying on behalf of U.S. Bank (not Citibank), Boreman did not present any evidence that called into question the accuracy or veracity of Zhao's affidavit. Accordingly, we find that Zhao's affidavit is admissible summary judgment evidence. Boreman's first assignment of error is not well-taken.

## B. U.S. Bank met its summary judgment burden.

{¶ 37} In his second assignment of error, Boreman argues that U.S. Bank failed to meet its evidentiary burden in five specific ways. We address each in turn.

17.

### 1. Zhao properly authenticated Nationstar's business records.

{¶ 38} Boreman first argues that Zhao failed to authenticate Nationstar's business records because, essentially, the business records attached to his affidavit include records from several different loan servicers, but his affidavit does not contain "specific, clear testimony as to what records Nationstar actually relied on * * * or specific, clear testimony as to the integration of * * *" prior servicers' records into Nationstar's records. U.S. Bank responds that Zhao properly authenticated Nationstar's records, including the records from prior servicers.

{¶ 39} To authenticate a piece of evidence, the party offering the evidence must also provide "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). In the context of business records, that requires the proponent to comply with Evid.R. 803(6). *Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, ¶ 9 (1st Dist.), citing Evid.R. 901(B)(10). The Ohio Supreme Court has identified the requirements to establish admissibility of records under Evid.R. 803(6), the business record exception to the hearsay rule:

> "To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified

18.

witness.'"  Weissenberger, Ohio Evidence Treatise (2007) 600, Section 803.73.  Even after these elements are established, however, a business record may be excluded from evidence if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  Evid.R. 803(6).

*State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.  A court "'may admit a document as a business record even when the proffering party is not the maker of the document, if the other requirements of Evid.R. 803(6) are met and the circumstances suggest that the record is trustworthy. * * * Trustworthiness of a record is suggested by the profferer's incorporation into its own records and reliance on it.'"  *HSBC Bank USA, N.A. v. Gill*, 2019-Ohio-2814, 139 N.E.3d 1277, ¶ 14 (1st Dist.), quoting *U.S. Bank, N.A. v. Christmas*, 2d Dist. Montgomery No. 26695, 2016-Ohio-236, ¶ 18, *vacated on other grounds*, 146 Ohio St.3d 1468, 2016-Ohio-5108, 54 N.E.3d 1267.

{¶ 40} A person qualified to lay the foundation for the business records must "possess a working knowledge of the specific record-keeping system that produced the document * * * [and] be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business."  (Brackets sic and internal quotations omitted.)  *Fed. Natl. Mtge. Assn. v. Brunner*, 2013-Ohio-128, 986 N.E.2d 565, ¶ 13 (6th Dist.).  The employee of a loan servicing company can be an "other qualified witness" within the meaning of Evid.R. 803(6).  *See HSBC Bank USA, N.A. v. Takats*, 6th Dist. Lucas No. L-14-1155, 2015-Ohio-3077, ¶ 17-19 (affidavit of loan

19.

servicing company employee that averred to "personal knowledge of the manner in which [the servicing company's] business records are created and maintained * * *" was sufficient to "demonstrate[] that [the employee was] competent to lay the foundation for admissibility of the loan records as business record under Evid.R. 803(6).").

{¶ 41} Boreman's entire argument against Zhao's authentication of the records is based on a statement between paragraphs 3 and 4 of Zhao's affidavit that reads, "If Nationstar relies on prior servicer records, include the following language as a separate paragraph[.]" Boreman claims that this statement "undercut" Zhao's authentication of the records because "there was no testimony from Mr. Zhao whether Nationstar is relying on their own records, or prior servicing records." However, contrary to Boreman's claim, immediately following that statement, Zhao averred in paragraph 4 of his affidavit that, among other things, SPS's records "have been integrated and *are relied upon by Nationstar* as part of Nationstar's business records." (Emphasis added.) Further, in paragraph 11 of his affidavit, Zhao avers that the documents attached to his affidavit— including note 1, mortgage 1, assignments of mortgage 1, loan modification agreements, demand and acceleration notices, and Boreman's payment history—are "true and correct copies of documents electronically stored in Nationstar's business records * * *." This information is sufficient to show that the records Zhao included with his affidavit are what he claims they are, i.e., business records either created by Nationstar or received by Nationstar from SPS and integrated into Nationstar's recordkeeping system.

20.

{¶ 42} Regardless, because some of the documents show that Boreman's loan had other servicers (e.g., Wilshire and BAC) during its lifetime, Boreman argues that, to properly authenticate the loan documents, Zhao was required to aver that Nationstar integrated and relied upon records from each of the prior servicers or U.S. Bank was required to have someone familiar with the recordkeeping practices of each of those servicers authenticate the records. We disagree. Zhao's affidavit is sufficient to show that the records he attached are what he says they are: business records either (1) kept by Nationstar in the regular course of its business, made by someone with knowledge of the thing recorded, and made at or near the time of the transaction, or (2) received from SPS and integrated into Nationstar's system and relied on by Nationstar. The fact that some of the documents attached to Zhao's affidavit originated with businesses other than Nationstar or SPS is insufficient, standing alone, to raise a genuine issue of material fact regarding the documents' authenticity, and Boreman does not point to any other evidence in the record that raises questions about the records' trustworthiness. Zhao's affidavit sufficiently authenticated Nationstar's business records, and Boreman's arguments to the contrary are without merit.

### 2. Zhao properly authenticated the note and mortgage.

{¶ 43} Next, Boreman argues that Zhao failed to authenticate the note and mortgage. He contends that Zhao's failure to aver that he compared the original note and mortgage to the copies of the note and mortgage included with his affidavit was "important and necessary" because the copies are "heavily redacted" and "[w]ithout some

specific averment explaining the comparison of the originals to the business records, triable issues of fact remain as to whether what is in Nationstar's business records are exact copies of the original." U.S. Bank responds that Zhao was not required to affirmatively state that he compared the originals to the copies and that Zhao's affidavit sufficiently authenticated the note and mortgage. We agree.

{¶ 44} There is no requirement that the affiant authenticating a copy of a document specifically attest that he compared the copy to the original. In fact, "Civ.R. 56(E) is satisfied by a statement in the affidavit declaring that the copies of the documents submitted are true and accurate reproductions of the originals." *Downs*, 6th Dist. Erie No. E-15-062, 2016-Ohio-5360, at ¶ 21. Zhao averred in paragraph 11 of his affidavit that the copies of the note and mortgage attached to his affidavit were "true and correct copies of documents electronically stored in Nationstar's business records * * *," which is all that Civ.R. 56(E) requires.

{¶ 45} Although Boreman speculates that it is "possible that [Zhao] viewed the wrong loan file" or that Zhao "simply signed the affidavit without reviewing any documents at all," he does not point to any facts in the record that contradict Zhao's statement that the copies of the note and mortgage attached to his affidavit are "true and correct copies." To withstand summary judgment, an opposing party must do more than speculate; he must point to specific facts showing that a genuine issue remains for trial. Civ.R. 56(E); *Bank of New York Mellon v. Bobo*, 2015-Ohio-4601, 50 N.E.3d 229, ¶ 13 (4th Dist.), quoting *Loveday v. Essential Heating Cooling & Refrig., Inc.,* 4th Dist. Gallia

22.

No. 08CA4, 2008-Ohio-4756, ¶ 9 ("'Mere speculation and unsupported conclusory assertions are not sufficient' to meet the nonmovant's reciprocal burden under Civ.R. 56(E) to withstand summary judgment."). Accordingly, Boreman's argument that Zhao failed to authenticate the note and mortgage is without merit.

### 3. Nationstar complied with the notice-of-default provisions.

{¶ 46} Boreman next contends that Zhao failed to present admissible evidence that Nationstar sent a notice of default as required by the note and mortgage as a condition precedent to foreclosure. Although Zhao included copies of two notices of default with his affidavit, Boreman argues that there are issues of fact still in dispute regarding Nationstar's compliance with the notice provisions because neither letter is addressed to Boreman's ex-wife, who was listed as a borrower on the mortgage, and Zhao did not say when Nationstar sent the notices or refer to Nationstar's mailing logs to confirm that the letters were, in fact, mailed. Boreman also argues that his affirmative defense that the notice of default failed to include the amount of the arrearage he allegedly owed, when viewed along with the arrearage amount included in the notices of default, creates an issue of fact for trial.

{¶ 47} U.S. Bank counters that Zhao specifically testified that a default notice was sent to Boreman on April 5, 2016, in accordance with the terms of the note and mortgage and included authenticated copies of the notice with his affidavit, which is sufficient to show that Nationstar (on U.S. Bank's behalf) complied with the notice provisions, and Boreman has not presented any evidence to the contrary.

23.

**{¶ 48}** If a note or mortgage contains a term requiring prior notice of default or acceleration, compliance with that requirement is a condition precedent to foreclosure. *Wells Fargo Bank v. Sowell*, 2015-Ohio-5134, 53 N.E.3d 969, ¶ 24 (8th Dist.).

**{¶ 49}** In this case, the note and mortgage each contain terms requiring notice of default. Section 7(C) of the note states that:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of the Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

In section 8, the note instructs that "any notice that must be given to [the borrower] under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address."

**{¶ 50}** Section 22 of the mortgage states that:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument * * *. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and

24.

(d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. * * *

In section 15, the mortgage instructs that "[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers * * *."

{¶ 51} Included with Zhao's affidavit are two letters dated April 5, 2016, and addressed to Boreman at the Ottawa Street address. The letters are identical, with the exception that the second letter includes the notation "Sent Via Certified Mail" at the top left, with a series of digits (presumably the tracking number) underneath. The same numbers are also in the lower left corner of each page of the second letter. Each letter says that (1) Boreman's loan is in default from May 1, 2015; (2) to cure the default, he must pay $9,728.59 by May 10, 2016; (3) failure to cure the default could result in acceleration of the amount due under the note, foreclosure proceedings, and sale of the property; and (4) Boreman had the right to reinstate his loan after acceleration and the right to assert defenses to acceleration and foreclosure in the foreclosure proceedings.

25.

{¶ 52} With each letter is what appears to be a copy of an envelope or a printout of a mailing sheet with Nationstar's name and address in the space for the return address, Boreman's name and the Ottawa Street address in the space for the mailing address, and the notation "PRESORT / First-Class Mail / U.S. Postage and / Fees Paid / WSO" in the space for the stamp. In addition, the envelope or mailing sheet with the second letter includes the same tracking number that is found on the second letter and the notation "RETURN RECEIPT REQUESTED" above the mailing address.

{¶ 53} On their faces, the letters attached to Zhao's affidavit comply with the notice provisions in the note and mortgage. They tell Boreman (1) that he is in default, (2) that he can cure the default by paying, (3) how much he must pay to reinstate his loan, (4) that the payment must be made by a date that is more than 30 days in the future, (5) the consequences of failing to cure the default, including acceleration of the debt and foreclosure, and (6) that he can raise defenses in any future foreclosure proceedings. Further, absent opposing evidence from Boreman, the first-class postage-paid notation in the stamp area of the envelope or mailing sheet is sufficient to show that Nationstar mailed the default notices by first-class mail. *Bank of Am., N.A. v. Staples*, 7th Dist. Mahoning No. 14 MA 109, 2015-Ohio-2094, ¶ 65-68.

{¶ 54} Regarding when Nationstar sent the letters, Zhao averred based on his personal knowledge of Nationstar's business records that the notices of default were sent to Boreman on April 5, 2016. Although Boreman claims that this was "not sufficient to provide evidence of when the document was mailed by Nationstar" and that Zhao should

26.

have included "[a] simple averment he reviewed Nationstar's business record or mailing logs to verify when [the default notices] were sent * * *," he did not offer any evidence of his own to counter Zhao's evidence of mailing or provide any legal authority supporting his claim that Zhao needed to provide mailing records.

{¶ 55} Boreman next points out that Zhao testified that Nationstar sent default notices to Wade Boreman and Dawn Boreman, but both letters attached to his affidavit are addressed to Wade Boreman. However, this does not defeat notice under the note and mortgage. Boreman was the only borrower listed on the note, so Dawn was not required to receive any notice under the note. And the mortgage specifically provides that "[n]otice to any one Borrower shall constitute notice to all Borrowers * * *," so any failure of notice to Dawn is inconsequential because notice was properly sent to Boreman.

{¶ 56} Finally, Boreman claims that there is a genuine issue of material fact regarding the default notice because he asserted as an affirmative defense that the notice failed to include the amount he was in arrears, but the default notices attached to Zhao's affidavit included the amount of the default. Although he claims that this creates an issue of fact, Boreman is not permitted to rest on the allegations and denials in the pleadings and he did not present any other evidence that calls into question the default amount listed in the notices. Consequently, he did not meet his reciprocal burden to show that a genuine issue of material fact remains for trial. Boreman's arguments regarding the default notice are without merit.

27.

#### 4. U.S. Bank established the amount due under the note.

{¶ 57} Boreman next contests the amount U.S. Bank claims is due under the note. He argues that the payment history that Zhao included with his affidavit is untrustworthy because it "contains 4 different types of pay histories," but Zhao only authenticated records from Nationstar, and without the payment history, U.S. Bank has no evidence of the amount due. U.S. Bank responds that it was not required to present a payment history and Zhao's affidavit was sufficient to establish the amount due, particularly when Boreman failed to point to any contrary evidence. Even assuming it was required to present the payment history, U.S. Bank argues that Zhao properly authenticated the payment records as part of a prior servicer's records.

{¶ 58} In a foreclosure case, the amount due and owing on a note can be proven by a simple averment of the amount owed from a bank employee with personal knowledge of the debtor's account unless the debtor refutes the alleged amount with evidence that he owes a different amount. *U.S. Bank Trust, N.A. v. Jacobs*, 6th Dist. Lucas No. L-14-1268, 2015-Ohio-4632, ¶ 23, citing *Natl. City Bank v. TAB Holdings, Ltd.*, 6th Dist. Erie No. E-10-060, 2011-Ohio-3715, ¶ 12. In other words, U.S. Bank was not required to provide a payment history to prove what Boreman owed under the note; Zhao's testimony of the amount owed was sufficient. If Boreman had responded to the motion for summary judgment with evidence that the amount presented by Zhao was wrong, a triable issue of fact would remain. As it is, however, Boreman did not counter

28.

Zhao's testimony with any evidence that he owed a different amount under the note. Accordingly, we find that U.S. Bank presented admissible evidence of the balance due.

### 5. U.S. Bank has the right to enforce the note and mortgage.

{¶ 59} Finally, Boreman argues that U.S. Bank did not establish its right to enforce the note and mortgage because the only proof of ownership attached to the motion for summary judgment—and thus authenticated by Zhao—was proof of MILA's original ownership of the loan and the assignment of the loan from Citibank to U.S. Bank. U.S. Bank responds that, although the entire chain of assignments was not attached to the motion for summary judgment, as Boreman concedes, all necessary assignments were attached to Citibank's amended answer. Moreover, U.S. Bank claims, Zhao was not required to authenticate the documents because they were notarized, making them self-authenticating.

{¶ 60} To support a motion for summary judgment, "[t]he moving party must point to some evidence *in the record* of the type listed in Civ.R. 56(C)." (Emphasis added.) *Downs*, 6th Dist. Erie No. E-15-062, 2016-Ohio-5360, at ¶ 15, citing *Dresher*, 75 Ohio St.3d at 292-293, 662 N.E.2d 264. In other words, the evidence is not required to be attached to the motion for summary judgment as long as it has been filed in the case in a form that is permitted by Civ.R. 56(C) (i.e., "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *"). *Millstone Condominiums Unit Owners Assn. v. 270 Main St.*, 11th Dist. Lake No. 2011-L-078, 2012-Ohio-2562, ¶ 61.

29.

{¶ 61} Here, the record contains a complete chain of assignments from MILA—the original lender—to U.S. Bank—the current holder—which shows that U.S. Bank is entitled to enforce the note and mortgage.

{¶ 62} First, the original note, dated July 14, 2005, showing MILA as the lender and Boreman as the borrower, was included with Citibank's amended answer, crossclaim, and counterclaim. It was also attached to and authenticated by Zhao's affidavit, which was included with the motion for summary judgment. The note was indorsed in blank by MILA, and Zhao averred that U.S. Bank "directly or through an agent, has possession of the promissory note and held the note at the time of filing the answer." The holder of a note that is indorsed in blank has the right to enforce that note. *See JPMorgan Chase Bank, N.A. v. Swan*, 6th Dist. Lucas No. L-14-1186, 2015-Ohio-1056, ¶ 14. The record also contains three loan modification agreements that Boreman executed over the life of the loan. Each modification agreement, which changed the terms of the note, was attached to the motion for summary judgment and authenticated by Zhao as part of the business records that Nationstar obtained from SPS.

{¶ 63} After U.S. Bank pointed to this evidence in the record showing that no genuine issues of material fact remained regarding its right to enforce the note, Boreman did not point to any evidence contradicting Zhao's testimony that U.S. Bank had possession of the note when its crossclaim and counterclaim were filed, or that the terms of the note were modified as provided in the loan modification agreements. Accordingly,

30.

we find that no genuine issues of material fact remain to be resolved regarding U.S. Bank's right to enforce the note.

{¶ 64} Regarding the mortgage, the original mortgage, dated July 14, 2005, was attached to the amended answer, crossclaim, and counterclaim, and attached to and authenticated by Zhao's affidavit, which was included with the motion for summary judgment. The mortgage showed MILA as the lender, MERS, as nominee for MILA, as the mortgagee, and Boreman and Dawn Boreman as the borrowers.

{¶ 65} The first assignments in the record are two assignments of mortgage from MERS, as nominee for MILA, to BONY. One is dated August 10, 2009, and the other is dated June 5, 2012. Both were attached to Citibank's amended answer, counterclaim, and crossclaim. The pleadings in a case are properly considered on summary judgment. Civ.R. 56(C). Under Civ.R. 10(C), a copy of any "written instrument" that is attached to a pleading is a part of the pleading "for all purposes." "Thus, an attachment to the pleading can be considered a part of the pleading if it is a written instrument, and is proper evidence to rely on when moving for summary judgment." *U.S. Bank, N.A. v. Goldsmith*, 10th Dist. Franklin No. 14AP-783, 2015-Ohio-3008, ¶ 10. An assignment of mortgage is a "written instrument." *See U.S. Bank, N.A. v. Crow*, 7th Dist. Mahoning No. 15 MA 0113, 2016-Ohio-5391, ¶ 29.

{¶ 66} And although Zhao did not authenticate these assignments in his affidavit, he was not required to. Under Evid.R. 902, certain categories of documents are designated as "self-authenticating" documents that do not require extrinsic evidence of

31.

authenticity to be admissible. Among those are "acknowledged documents," which are "[d]ocuments accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public * * *." Evid.R. 902(8). The assignments from MERS to BONY are notarized, so they are self-authenticating, and no further authentication was necessary for them to be proper summary judgment evidence.

{¶ 67} Next, BONY assigned the mortgage to Citibank on November 17, 2017. Citibank included a copy of the November 17 assignment with its amended answer, crossclaim, and counterclaim. Because the assignment was included with a pleading, it is proper summary judgment evidence, *Goldsmith* at ¶ 10, and because it is notarized, it is self-authenticating under Evid.R. 902(8).

{¶ 68} Finally, Citibank assigned the mortgage to U.S. Bank on January 26, 2018. Citibank included a copy of the January 26 assignment with its motion for summary judgment, and Zhao authenticated the assignment in his affidavit that was included with the motion for summary judgment.

{¶ 69} These assignments show an unbroken chain from MILA—the original lender—to U.S. Bank—the party seeking to enforce the mortgage—and demonstrate that U.S. Bank is entitled to enforce the mortgage through foreclosure proceedings.

{¶ 70} In sum, the record supports summary judgment in U.S. Bank's favor. Zhao properly authenticated Nationstar's business records—including the note and mortgage— presented admissible evidence that Nationstar properly sent Boreman a notice of default as required by the terms of the note and mortgage, demonstrated the amount Boreman

32.

owed under the note, and established U.S. Bank's entitlement to enforce the note and mortgage. Despite U.S. Bank presenting evidence showing that there are no genuine issues of material fact remaining for trial, Boreman failed to meet his reciprocal burden of pointing to evidence in the record showing that facts remain in dispute. Accordingly, we find that summary judgment in U.S. Bank's favor is appropriate, and Boreman's second assignment of error is not well-taken.

### III. Conclusion

{¶ 71} Based on the foregoing, the July 26, 2018 and August 9, 2019 judgments of the Ottawa County Court of Common Pleas are affirmed. Boreman is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.
_____
JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, P.J.
_____
JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.